

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | Case No. 11-43075 |
| MARY HARP SHANKLES, | § | (Chapter 7) |
| | § | |
| Debtor. | § | |
| | § | |
| THE FIRST BANK OF ROXTON, | § | Adversary No. 12-4012 |
| TEXAS f/k/a SECURITY BANK OF | § | Adversary No. 11-4217 |
| WHITESBORO, | § | (Consolidated) |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MARY HARP SHANKLES, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| vs. | § | |
| | § | |
| MARK A. WEISBART, | § | |
| CHAPTER 7 TRUSTEE, | § | |
| | § | |
| Intervenor. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In this consolidated adversary proceeding,[1] the plaintiff is seeking a declaration that it has a valid and enforceable lien against the debtor-defendant's home. The plaintiff is also seeking a nondischargeable judgment against the debtor-defendant based on claims of actual fraud and false pretenses, 11 U.S.C. § 523(a)(2)(A), and the use of a materially false financial statement in connection with a home equity loan application, 11

---

[1] The plaintiff initiated a foreclosure action against the debtor prior to the debtor's bankruptcy, which the debtor removed to this Court. The Court assigned the foreclosure action adversary proceeding number 11-4217. In addition, during the pendency of the debtor's bankruptcy case, the plaintiff initiated an adversary proceeding, which the Court assigned number 12-4012, seeking a non-dischargeable judgment against the debtor. The Court consolidated the dischargeability proceeding with the foreclosure action and tried the actions together.

1

U.S.C. § 523(a)(2)(B). The chapter 7 trustee has intervened in this proceeding and seeks a judgment avoiding the plaintiff's lien on the debtor-defendant's home and disallowing any unsecured claim by the plaintiff against the bankruptcy estate. The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. §§ 157(b)(2)(B), (C), (I), (K), and makes the following findings of fact and conclusions of law, *see* FED. R. BANKR. P. 7052.

## SUMMARY OF THE DISPUTE

The plaintiff in this case is a bank that claims to hold a mortgage on the debtor's home and the surrounding 10 acres. The nature of the debtor's interest in her homestead has been the subject of dispute in the underlying bankruptcy case. Following a contested hearing in the bankruptcy case, the Court concluded that the debtor did not obtain an economic interest in the homestead when she fraudulently forged a will that purported to bequeath her husband's separate interest in various properties, including the homestead, to herself. The Court found that she did not obtain an economic interest in her homestead until she entered into a settlement agreement with her deceased husband's children that transferred the property to her. The Court, therefore, concluded that the debtor's interest in the homestead was capped by § 522(p)(1), because she acquired the economic interest within 1,215 days of her initiation of bankruptcy.

The bank obtained its lien on the debtor's home after she forged the will, but before the settlement agreement transferring title to the home to the debtor. The settlement agreement purported to preserve the bank's lien on the property. The debtor subsequently failed to make payments to the bank as and when due. She nonetheless opposes the bank's efforts to foreclose on its interest in her home, arguing that if she did not own an economic interest in the home when she sought a home equity loan from the

bank, then the bank could not have obtained a secured interest in it. If this Court does not find that the debtor's fraud and forgery results in a mortgage-free house, the debtor alternatively argues that the bank's lien is invalid because the bank failed to comply with all of the requirements for a home equity loan under Texas law.

The chapter 7 trustee has intervened in this adversary proceeding. His interests are generally aligned with the debtor. The trustee seeks to set aside the bank's lien on the debtor's home, which this Court has determined is exempt from the debtor's creditors only up to the capped amount of $146,450, thereby increasing the pool of assets in the bankruptcy estate available for distribution. The chapter 7 trustee also seeks to disallow the bank's claims for a distribution from the debtor's bankruptcy estate.

The bank seeks a declaratory judgment under 28 U.S.C. § 2201 that it has a valid and enforceable lien on 10 acres of the debtor's homestead. The bank seeks a non-dischargeable judgment for its debt, interest, legal fees and costs as secured against the real property.[2] The bank also requests that the Court lift the automatic stay so that it can foreclose on the debtor's homestead in satisfaction of the judgment.

**FINDINGS OF FACT**

**A.    The Parties**

1.    The plaintiff is The First Bank, Roxton, Texas, formerly known as Security Bank of Whitesboro.

2.    The debtor-defendant is Mary Harp Shankles.

3.    The intervenor is Mark Weisbart, acting as trustee of the Debtor's bankruptcy estate under chapter 7 of the Bankruptcy Code.

---

[2] Section 727(b) provides that a bankruptcy discharge under § 727(a) discharges a debtor from all prepetition debts except to the extent a bankruptcy court determines that a particular debt is non-dischargeable under § 523(a).

3

**B.     The Debtor's Acquisition of her Homestead**

4.     When the debtor married her husband, he owned numerous real properties, including approximately 180 acres known as 7782 Plainview Road in Sherman, Grayson County, Texas.

5.     The debtor and her husband lived at 7782 Plainview Road throughout their marriage.

6.     The debtor's husband died at their home on January 14, 2004.

7.     At some point in or around January 2004, the debtor signed her husband's name to a will dated January 14, 2004.  The signature was not witnessed.  The debtor later obtained a notarization and the signature of individuals who claimed to have witnessed the signing of the will.

8.     After her husband's death, the debtor submitted for probate the will that her husband purportedly signed on January 14, 2004.  The will named the debtor as the sole independent executor and bequeathed her husband's separate property interest in their homestead, as well as his separate interest in numerous other properties he had acquired prior to their marriage, to the debtor.

9.     The debtor's husband had children from a prior marriage.  The children contested the probate of the 2004 will.

10.     In September 2004, the children filed a *Notice of Lis Pendens* in the real property records of Grayson County, Texas, where the debtor's homestead is located.  The *lis pendens* advised of the litigation in probate court.

11.     The debtor, acting under her authority as independent executor under the forged will, deeded the homestead to herself.

12.     The litigation in the probate court went on for years.  The debtor began experiencing financial difficulties.

### C.     The Home Equity Loan

13.     For all of 2006, the 180 acres of land at 7782 Plainview Road was designated in the records of the Grayson County Central Appraisal District as property 119289, with two acres classed as residential and 178 acres in various classes of agricultural use, including 35 acres designated as "Average Crop," an additional 14.24 acres designated as "Average Crop," 44.4 acres designated as "Marginal Crop," 10.52 acres designated as "Pasture," and 74.06 acres designated as "Poor Pasture."

14.     According to the records of the Grayson County Appraisal District, the two residential acres were the "homesite."

15.     On May 4, 2007, the debtor signed a form requesting removal of the agricultural exemption designation on eight acres of property number 119289.  Nothing in the form designated which of the 178 acres of agricultural property were the eight affected acres.  Accordingly, the appraisal district removed the agricultural exemption on eight acres of property designated as "Poor Pasture" in order to minimize the tax impact on the debtor.  Nothing in the records of the Grayson County Appraisal District reveals which eight of the 74.06 of "Poor Pasture" acres were reclassified.

16.     In late May 2007, the debtor approached the bank about a home equity loan.  The debtor signed a personal financial statement dated May 31, 2007, in which she listed all of the property she had deeded to herself as the executor of the 2004 will.  She told the bank officer that her husband had passed away.  In the application, she answered

"yes" when asked whether there was litigation pending against her. The bank officer did not inquire as to the nature of the litigation.

17.    The bank reviewed the debtor's credit report as well as an appraisal of the homestead property in determining whether to make a home equity loan to the debtor.

18.    The bank was aware that some of the debtor's homestead was designated in the real property records as exempt agricultural property.

19.    In June 2007, the bank agreed to loan the debtor $175,000 to be secured by 10 acres of real property located at 7782 Plainview Road in Sherman, Grayson County, Texas.

20.    In June 2007, Cox Land Surveying Company surveyed a 10-acre rectangular tract out of the 180 acres at 7782 Plainview Road. The tract is approximately 370 feet wide by 1200 feet long. The survey was dated June 27, 2007. This 10-acre tract is the subject of the home equity loan.

21.    The loan closing took place on June 27, 2007, at the title office of Security Title Inc. in Sherman, Texas.

22.    At the closing, the debtor executed a *Texas Home Equity Promissory Note* ("Note") in the original principal amount of $175,000 dated June 27, 2007. The Note was payable to Security Bank of Whitesboro.

23.    At the closing, the Debtor executed a *Texas Home Equity Security Instrument* ("Security Instrument") that was later recorded at No. 00016262, Volume 4280, Page 88 of the Official Public Records of Grayson County, Texas. The legal description to the property in the Security Instrument was the same description on the Cox survey.

6

24.     At the closing, the debtor executed a *Texas Home Equity Borrower Affidavit and Agreement* (the "Affidavit").  The debtor stated in the Affidavit that the 10 acres was the debtor's homestead and was not designated for agricultural use.

**D.      The Settlement**

25.     On or about August 21, 2009, the debtor entered into a settlement agreement with the children of Douglas Shankles resolving the will contest.

26.     Pursuant to the settlement agreement, the parties agreed to admit to probate a will dated July 8, 1993, which will was admitted to probate by the Grayson County Court at Law on December 12, 2008.

27.     The 1993 will provided, with respect to the Plainview Road property, that the home and surrounding five acres would be given in trust to Mary Harp Shankles, as trustee and as beneficiary for life.  The remaining 175 acres were willed to a generation skipping trust for the benefit of Douglas' children and grandchildren, together with all other real property that Douglas owned at death.  The trustees of the generation skipping trust were to be Douglas' children.

28.     The settlement agreement modified the terms of the 1993 will.  Under the settlement agreement, the debtor received ownership of the entire 180-acre tract.  The agreement stated that the transfer to the debtor was subject to the bank's lien on the property.  The settlement agreement also released the *lis pendens* and provided that the debtor's prior deed of the 180-acre tract to herself was void *ab initio*.

**E. The Bankruptcy**

29.     The debtor failed to make her mortgage payments to the bank as and when due.  On August 5, 2011, the bank initiated foreclosure proceedings against the debtor in

a Texas state court.  The debtor opposed the bank's application for foreclosure by, among other things, denying that the bank had complied with all of the requirements of the Texas Constitution.

30.     On October 5, 2011, the debtor filed for bankruptcy under chapter 11 of the Bankruptcy Code.  The debtor removed the pending state court foreclosure action to this Court.

31.     The bank moved for relief from the automatic stay imposed by § 362(a) of the Bankruptcy Code and requested that the Court remand the foreclosure action back to state court.  The Court denied the bank's motion to remand.  With respect to the bank's motion for relief from the stay, the Court entered an order on January 12, 2012, continuing the stay and requiring that the debtor maintain insurance and pay *ad valorem* taxes.

32.     The bank filed an adversary complaint objecting to the dischargeablity of the debtor's obligations to the bank pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B) of the Bankruptcy Code.  The debtor responded and raised numerous affirmative defenses and counterclaims, including a counterclaim for a declaratory judgment that the bank had not complied with the Texas Constitution.  The parties subsequently requested and obtained an order from this Court consolidating the foreclosure proceeding and the dischargeability proceeding for purposes of trial.

33.     The debtor's chapter 11 case was converted to chapter 7 on February 29, 2012.  The chapter 7 trustee intervened in the adversary proceeding and filed a counterclaim against the bank.  The trustee seeks to establish that, because the agricultural exemption was not removed from all of the ten acres in which the bank

8

obtained a secured interest, the bank's home equity loan violated the Texas Constitution, and the bank's lien on the entire ten acres is invalid and ineffective.  The trustee also seeks to disallow the bank's unsecured claim against the debtor's bankruptcy estate.

34.     In her bankruptcy schedules, the debtor listed 7782 Plainview Road as her exempt homestead.  Several creditors (attorneys who represented the debtor in the will contest) objected to the claimed exemption.[3]

35.     On September 24, 2012, the Court entered a memorandum opinion regarding the objections to the debtor's homestead exemption.  The Court made the following findings of fact with respect to ownership of the 180 acres of real property:

> Douglas Shankles, the Debtor's deceased husband, acquired the real property located at 7782 Plainview Road in 1977 and 1978.  The Debtor married Douglas in 1992, and they lived at 7782 Plainview Road during their marriage.  They did not have any children.  Douglas, however, had children from a prior marriage.
>
> Douglas was diagnosed with cancer in 2003, and he died at home on January 14, 2004. On February 14, 2004, the Debtor filed an "Application for Probate of Will dated January 14, 2004" in Grayson County, Texas. Although the will purported to have been signed by Douglas on the day of his death, Douglas was incapable of reviewing or signing any documents that day.
>
> At the hearing before this Court, the Debtor initially testified that the wrong date was on the will, and Douglas actually signed it in the hospital several days before his death.  The will, however, states that it was witnessed and notarized on January 14, 2004.  The Debtor eventually admitted on the witness stand that she signed the will for Douglas on some date other than the date the will was purportedly witnessed and notarized.  The Debtor further admitted that the notary was not present when she signed the will.  The Debtor thereafter submitted an application to the state court requesting that the fraudulent and forged will be admitted for probate.
>
> The will the Debtor signed for Douglas appointed her as independent executor of Douglas' probate estate.  Douglas' children challenged the authenticity of the 2004 will as well as several other wills and

---

[3] The validity of the bank's lien was not at issue in the exemption proceeding.  Rather, the issue for the Court to decide was whether the debtor's interest in her homestead was exempt from her creditors under Texas law and the applicable provisions of the Bankruptcy Code.

agreements the Debtor produced.  During the pendency of the will contest, the Debtor transferred Douglas' separate property to herself, including the property at 7782 Plainview Road, by executing deeds and other instruments.

The Debtor eventually withdrew the 2004 will from probate.  In addition, the Debtor eventually entered into a settlement whereby all parties, including the Debtor, generally agreed that any and all deeds or other instruments of conveyance executed by the Debtor for the purpose of transferring the real property interests owned by Douglas were "cancelled, rescinded, revoked, and rendered null and void ab initio …."

The 2004 will was fraudulent and forged when made.  The Debtor's forgery of Douglas' signature on the 2004 will was abundantly clear from her testimony at the exemption hearing.  The will was fraudulent since she signed the will for her husband, the notary was not present, the date of the will is incorrect, and it is not clear when the witnesses signed the will.

36.     The debtor is appealing the Court's decision regarding her claimed exemption.

## CONCLUSIONS OF LAW

### A.     Validity of the Plaintiff's Lien

1.     The validity of the bank's lien on the debtor's homestead is disputed in this adversary proceeding.   Article XVI, Section 50 of the Texas Constitution and sections 41.001, *et seq*. of the Texas Property Code govern the validity of liens that may be enforced against Texas real property that qualifies as a homestead.

2.     Noncompliance with the requirements of the Texas Constitution renders liens voidable, not void.  *See Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674-675 (5th Cir. 2013).  The party seeking to invalidate a lien on a homestead based on noncompliance with the Texas Constitution bears the burden of proof.  *See In re Chambers*, 419 B.R. 652, 671 (Bankr. E.D. Tex. 2009)

10

### 1.    The Court's Prior Ruling

3.    As an initial matter, the debtor argues that the bank did not obtain an enforceable lien on her homestead because, as this Court previously found and concluded, the forged will did not provide her with an economic interest in the property.[4] The bank contends that the debtor's argument is barred by the after-acquired title doctrine.

4.    Under the after-acquired title doctrine, "when one conveys land by warranty of title, or in such a manner as to be estopped to dispute the title of his grantee, a title subsequently acquired to that land will pass *eo instante* to his warrantee, binding both the warrantor and his heirs and subsequent purchasers from either." *Houston First American Sav. v. Musick,* 650 S.W.2d 764, 770 (Tex. 1983) (citing *Caswell v. Llano Oil Co.,* 120 Tex. 139, 36 S.W.2d 208, 211 (Tex. 1931)). The after-acquired title doctrine applies to liens on homesteads. *See Dominguez v. Castaneda*, 163 S.W.3d 318 (Tex. App. – El Paso 2005).

5.    Here, the debtor requested and received a loan to be secured by what she represented to the bank was her fee-simple interest in 10 acres of her homestead. The debtor subsequently resolved a dispute over her ownership interest in her homestead, among other things, in a settlement with her deceased husband's children. The settlement

---

[4] Alternatively, the bank contends that it is entitled to the status of a bona fide mortgagee, which is entitled to the same protection as a bona fide purchaser. Under section 13.001 of the Texas Property Code, a lender can be a bona fide mortgagee if the lender takes a lien in good faith, for valuable consideration, and without actual or constructive notice of outstanding claims. *See, e.g., Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 769 (Tex. 1983); *Gordy v. Morton,* 624 S.W.2d 705, 707 (Tex. App. – Houston [14th Dist.] 1981, no writ). A bank is charged with notice of all facts that might have been discovered by a diligent inquiry, if the recitals of an instrument or document in the chain of title are sufficient to put it on inquiry. *See generally* 2 Tex. Prac. Guide Real Trans. § 11:93 (collecting authority). In this case, the bank knew litigation was pending against the debtor. The bank did not inquire about the nature of the pending litigation, and the bank failed to show that it looked for the *lis pendens* and could not or did not find it.

specifically sought to preserve the bank's lien on her homestead while voiding the debtor's prior attempt to deed the property to herself under the forged will. The settlement agreement, having voided the debtor's deed of the property to herself *ab initio*, provided the debtor with a new deed to the property.

6.      The debtor caused the dispute over her ownership of the homestead by forging her husband's will. The circumstances surrounding her conveyance of a lien on the homestead to the bank, and her settlement with her deceased husband's heirs, give rise to the after-acquired title doctrine. The debtor is barred from seeking to defeat the bank's interest in her homestead by arguing that, when she entered into the home equity loan, she had no title. S*ee, e.g., C.D. Shamburger Lumber Co. v. Bredthauer*, 62 S.W.2d 603, 605 (Tex. Civ. App. — Fort Worth 1933); *Benge v. Scharbauer*, 254 S.W.2d 236 (Tex. Civ. App. — El Paso 1952), *affirmed* 259 S.W.2d 166, 168 (1953).

### 2.      The Texas Constitution

7.      Next, the debtor and the chapter 7 trustee seek to establish that the bank did not obtain an enforceable lien on the debtor's homestead, because the home equity loan violated the Texas Constitution. The bank responds the residual four-year statute of limitation bars the debtor and the chapter 7 trustee from seeking to invalidate its lien under the Texas Constitution. *See* Tex. Civ. Prac. & Rem. Code § 16.051

### a.   Whether the Constitutional Challenge Is Barred By Limitations

8.      The Fifth Circuit recently applied a four-year statute of limitations to actions seeking to avoid liens based on infirmities under section 50(a)(6) of the Texas Constitution. *See Priester* 708 F.3d at 674-675.

9.      Here, the debtor obtained a home equity loan from the bank in June 2007. The bank initiated a foreclosure proceeding in state court in August 2011.  In her response to the application for foreclosure in September 2011, the debtor denied that the bank had complied with the applicable provisions of the Texas Constitution and was entitled to foreclosure.  The debtor filed a bankruptcy petition in October 2011 and removed the foreclosure action to this Court.

10.      In January 2012, the bank filed a secured claim in the amount of approximately $171,600 against the debtor's bankruptcy estate.  In addition, in January 2012, the bank initiated an adversary complaint against the debtor seeking a nondischargeable judgment against her in the principle amount of $175,000 plus interest and its reasonable attorneys' fees.  The debtor's answer to the adversary complaint once again challenged the bank's compliance with the Texas Constitution.

11.      After the debtor's case converted to chapter 7, the chapter 7 trustee intervened in the consolidated adversary proceeding.  The trustee, like the debtor, asserted a counterclaim that challenged the bank's compliance with the Texas Constitution.

12.      The deadline for filing a cause of action depends on whether the action is filed as a counterclaim or as a separate action for affirmative relief.  Under Texas law, a party may file a counterclaim even though, as a separate action, it would be barred by limitations so long as the counterclaim arises out of the same transaction or occurrence that is the basis of the lawsuit.  *See* TEX. CIV. PRAC. & REM. CODE § 16.069(a).  The purpose of section 16.069 "is to prevent a plaintiff from waiting until the adversary's valid claim arising from the same transaction was barred by limitations before asserting

his own claim." *Wells v. Dotson,* 261 S.W.3d 275, 281 (Tex. App. – Tyler 2008, no pet.) (citing *Hobbs Trailers v. J.T. Arnett Grain Co.,* 560 S.W.2d 85, 88–89 (Tex. 1977)).

13.    Texas courts "apply a logical relationship test to determine whether counterclaims arise out of the same transaction or occurrence." *Commint Technical Servs., Inc. v. Quickel,* 314 S.W.3d 646, 653 (Tex. App. – Houston [14th Dist.] 2010, no pet.) (citing *Jack H. Brown & Co. v. Nw. Sign Co.,* 718 S.W.2d 397, 400 (Tex. App. – Dallas 1986, writ ref'd n.r.e.)).  The logical relationship test is met when the same facts are significant and logically relevant to both claims.  *Commint Technical Servs.,* 314 S.W.3d at 653.  There is no logical relationship when none of the same facts are relevant to both claims.  *Id.*

14.    Here, the counterclaims challenging the validity of the bank's lien under the Texas Constitution are logically related to the bank's action seeking to have its claim liquidated by this Court, determined nondischargeable, and the automatic stay lifted so that the bank can enforce the Court's judgment by foreclosing on the debtor's home.[5] The debtor and trustee are challenging the validity of the very transaction that gave rise to the debt the bank is seeking to enforce.  Either the facts show that the bank has a valid lien and is entitled to foreclose, as the bank claims, or the facts show that bank does not have a valid lien and is not entitled to foreclose, as the debtor and trustee counterclaim.

15.    The debtor and the chapter 7 trustee are not seeking an affirmative recovery from the bank.  Their counterclaims are defensive in nature.  They are seeking

---

[5] In its post-trial briefing, the bank argues that the counterclaims asserted by the debtor and the chapter 7 trustee are not logically related to its request to have its claim determined nondischargeable under the Bankruptcy Code.  This argument ignores the fact that a determination of the debtor's liability to the bank, if any, is a necessary prelude to determination of dischargeability.

to prevent the bank from foreclosing on the debtor's home and, to the extent the bank holds an unsecured claim, collecting the unsecured claim from the bankruptcy estate.

16.     The Court, therefore, concludes that the statute of limitations upon which the bank relies does not bar the debtor or trustee from challenging the bank's claim or lien.  Moreover, a statute of limitation generally does not bar a defendant from asserting an intrinsically defensive claim which, if successful, will operate as an abatement either wholly or partially of the amount claimed.  *See, e.g., Smallwood v Singer*, 823 S.W.2d 319 (Tex. App. – Texarkana 1991, no writ).

### b.  Whether the Home Equity Loan Violated §50(a)(6)(I) of the Texas Constitution

17.     As relevant to this proceeding, the Texas Constitution prohibits "homestead property designated for agricultural use as provided by statutes governing property tax" from being pledged to secure a home equity loan unless the property "is used primarily for the production of milk."  TEX. CONST. art. XVI, § 50(a)(6)(I).

18.     The debtor's homestead qualified as rural homestead property at all relevant times under Texas law.  The property records reflect that eight of the 10 acres in which the bank claims a secured interest were designated for agricultural use at the time of closing.  The debtor's homestead property was not being used primarily for the production of milk.

19.     Thus, the home equity loan in this case violated section 50(a)(6)(I) of the Texas Constitution by granting the bank a secured interest in property designated for agricultural use.

### c.  The Texas Forfeiture Provision

20.     When a home equity loan violates the terms of section 50(a)(6), section 50(a)(6)(Q)(x) of the Texas Constitution generally provides that the lender forfeits the principal and interest.

21.     There is limited case law applying the forfeiture provisions to a violation of section 50(a)(6)(I) of the Texas Constitution.  One of the few cases interpreting the agricultural-use designation in the home equity loan context held that including agricultural-use designated property invalidated the entire loan.  *See LaSalle Bank Nat'l Ass'n v. White*, 217 S.W.3d 573, 577 (Tex. App. – San Antonio 2006), reversed in part on other grounds, *Bank Nat'l Ass'n v. White*, 246 S.W.3d 616 (Tex. 2007).

22.     Although the home equity loan in this case violated the agricultural-use provision in section 50(a)(6)(I), the bank points out that the debtor signed an affidavit stating that the 10 acres she offered as collateral to the bank was not designated for agricultural use.  The Texas Constitution does not include any provision allowing a lender to conclusively rely on such an affidavit in the context of the agricultural-use designation.  Furthermore, as a general rule, lenders may not rely on an estoppel defense to secure a lien on a homestead.  *See Smith v. JPMorgan Chase Bank*, 825 F.Supp.2d 859, 862 (S.D. Tex. 2011) (quoting *Texas Land & Loan Co. v. Blalock*, 13 S.W. 12, 13 (Tex. 1890)).

23.     The agricultural-use designation of the debtor's homestead was a matter of public record.  The bank did not obtain a survey of the 10 acres in which it sought to obtain a secured interest, and for which it needed the debtor to remove the agricultural exemption, until after the debtor had requested the removal of the agricultural exemption.

The bank, having failed to exercise due diligence, may not rely upon the debtor's affidavit that incorrectly states that the 10 acres described in the Cox survey were not designated as exempt agricultural property.

24.     The bank's lien on the 10 acres is invalid, ineffective, and unenforceable because such property is part of the debtor's rural homestead and the bank did not comply with all of the requirements imposed by the Texas Constitution for making home equity loans in August 2009 (or at any time thereafter) – the date on which this Court has found that the debtor acquired an economic interest in such property.

25.     The defect in the home equity loan is incurable and the bank's lien is void under section 50(a)(6)(Q) of article XVI of the Texas Constitution.  Alternatively, even if a cure were possible, the bank made no effort to cure any violations of the home equity lending provisions of the Texas Constitution within the 60-day period provided by Article XVI, Section 50(a)(6)(Q)(x).

### 3.     Personal Liability

26.     Section 50(a)(6)(C) of the Texas Constitution provides that there is no recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud.  In this case, the debtor did not commit actual fraud in connection with the home equity loan, as discussed below, and is not personally liable to the bank.

27.      For all the foregoing reasons, the bank's claims against the debtor and her bankruptcy estate are disallowed in their entirety.[6]

---

[6] In light of the Court's conclusion, the Court need not address the debtor's other objections to the bank's compliance with the Texas Constitution.  The Court also does not reach question of whether to lift the automatic stay imposed by § 362(a).

17

### B.        Dischargeability

28.    Although the Court has concluded that the bank does not have a claim against the bankruptcy estate, the Court will analyze the bank's request for a judgment of non-dischargeability in order to provide the parties with a full analysis.  In particular, the bank seeks a judgment that the debtor's obligations to it are non-dischargeable in bankruptcy pursuant to §§ 523(a)(2)(A) or (B).

### a.   Actual Fraud, False Pretenses, False Representation

29.    Section 523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition,

11 U.S.C. § 523(a)(2)(A).

30.     Section 523(a)(2)(A) encompasses similar but distinct causes of action. Although other circuits have applied a uniform standard to all § 523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1291 (5th Cir. 1995).

31.    For the debtor's representations to the bank to constitute false pretenses or false representation, the bank must prove that the debtor told: "(1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party." *In re Allison,* 960 F.2d 481, 483 (5th Cir. 1992).[7]

---

[7] While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis ( In re Davis),* 377 B.R. 827, 834 (Bankr.E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland),* 291 B.R. 740, 760 (Bankr .E.D. Tenn. 2003).

32.     For the debtor's representations to the bank to constitute actual fraud, the bank must show that: "(1) the Debtor made representations; (2) that at the time they were made, Debtor knew to be false; (3) the Debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate cause of the representations." *RecoverEdge* 44 F.3d at 1293.

33.     Here, the bank argues that the debtor knowingly misrepresented to the bank that the collateral securing the loan was not designated as agricultural property and that she would file with the county a revocation of any designation of the collateral as agricultural property.

34.     With respect to the debtor's statement that the 10 acres that she offered to the bank as collateral was not designated as exempt agricultural property, the bank has failed to show that the debtor knew this statement to be false.  The debtor had requested that the county remove the agricultural exemption from eight acres of her property so that a total of 10 acres would not be designated for agricultural use.  The county complied with the debtor's request.

35.     The bank obtained a survey of the 10 acres upon which it intended to take a lien *after* the debtor requested removal of the agricultural exemption.  At the time of closing, the debtor was unaware that the acreage re-designated by the county did not match the 10 acres securing the home equity loan.

36.     The classification of the property as agricultural was a matter of public record.  Because the public record was available for the bank to review at any time, and because the bank did not obtain a survey of the 10 acres in which it sought a lien until

after the debtor requested removal of the agricultural exemption, the bank did not reasonably rely on the debtor's affidavit stating that the 10 acres was not designated as exempt agricultural property.

37.   The debtor's statement of her future intent to remove any agricultural exemption, even if false, fails to satisfy the above-stated requirements of § 523(a)(2)(A).

38.   The Court, therefore, concludes that the bank has failed to establish a non-dischargeable claim for fraud, false pretenses, or false representation.

### b. Materially False Written Statement

39.   The bank also argues that the debtor induced the bank to loan her money based on a written financial statement that contained false information about her net worth and with respect to her ownership of assets.   The bank argues that the debtor's written statements were false, because the debtor knew she had forged her deceased husband's will through which she obtained title to the property she listed as her assets.

40.   In order to prevail on its claim under § 523(a)(2)(B), the bank must prove four elements by a preponderance of the evidence.   *Norris v. First Nat'l Bank (In re Norris),* 70 F.3d 27, 29 (5th Cir. 1995).   A debt will be non-dischargeable to the extent it is obtained by the use of a written statement:

> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

*Id.; see also Gen. Elec. Capital Corp. v. Acosta (In re Acosta),* 406 F.3d 367, 374 (5th Cir. 2005).

41.     A statement is materially false if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Jordan v. Se. Nat'l Bank (In re Jordan* ), 927 F.2d 221, 224 (5th Cir. 1991); *see also In re Norris,* 70 F.3d at 30 n. 10.

42.     The term "financial condition" as used in § 523(a)(2)(B)(ii), means "the general overall financial condition of an entity or individual[.]" *In re Bandi,* 683 F3d 671, 676 (5th Cir. 2012).

43.     Under § 523(a)(2)(B), ... "intent to deceive may be inferred from use of a false financial statement." *In re Young,* 995 F.2d 547, 549 (5th Cir. 1993).  A judge may look at the totality of the circumstances and infer an intent to deceive when "[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine" to produce such an inference.  *In re Norris,* 70 F.3d at 31 n. 12 (quoting *In re Miller,* 39 F.3d 301, 305 (11th Cir. 1994)).

44.     Here, the debtor's financial statements included assets that she transferred to herself under the authority granted to her by a will she forged and submitted for probate.  The debtor later entered into a settlement in which she agreed that the transfers she made to herself would be void *ab initio.*  Nonetheless, at the time she completed the financial statement, she held record title to the assets listed in her financial statement.  Her settlement with her deceased's husband's heirs cured the problem with title as previously discussed.

45.     Although there was no way for the bank to know that the debtor had fraudulently transferred assets to herself, the debtor's actions were the subject of litigation at the time she sought a home equity loan from the bank.  The debtor disclosed

to the bank that litigation was pending against her.  The bank failed to look for a *lis pendens* or to inquire as to the nature of the litigation and, thereby, apprise itself of the dispute.  Even if the debtor's financial statements were false because they included ill-gotten gains, the bank did not justifiably or reasonably rely on her statements.

46.     The Court, therefore, concludes that the bank has failed to establish a nondischargeable claim under § 523(a)(2)(B).

## CONCLUSION

47.      For all the foregoing reasons, the Court concludes that the home equity loan violated the Texas Constitution and, therefore, the bank's lien on the debtor's home is invalid and unenforceable.   The Court further concludes that the debtor is not personally liable to the bank, and even if she were, the bank's claim against her would be dischargeable in bankruptcy.

48.     The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Signed on 9/23/2013

*Brenda T. Rhoades*       SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE